**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JEFFREY JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action: 3:21-cv-131 |
| | § | |
| EQUIFAX INFORMATION | § | With Jury Demand Endorsed |
| SERVICES LLC, TRANS UNION LLC | § | |
| and NATIONSTAR MORTGAGE LLC | § | |
| | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Jeffrey Jones ("Plaintiff"), by and through counsel, for his Complaint against Defendants, Equifax Information Services LLC, Trans Union LLC, and Nationstar Mortgage LLC, jointly, severally, and in solido, states as follows:

### I.  INTRODUCTION

1.      Two of the Defendants are, consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and Defendant, Nationstar Mortgage LLC is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Nationstar Mortgage LLC is also liable for violating the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e).  Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II.  PARTIES

2.      Plaintiff, Jeffrey Jones is a natural person residing in Adams County, Colorado, is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. §

1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

5.      Upon information and belief, Defendant Nationstar Mortgage, LLC or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

6.      Nationstar is a servicer as defined by RESPA, 12 U.S.C. § 2605(i)(2).

7.      As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, TransUnion, and Innovis.

### III.  JURISDICTION AND VENUE

8.      Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also

asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

9.      Venue is proper in this District, because CRA Defendants and Nationstar transact business in this District. Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

10. Venue is further proper in this District, because CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiffs' dispute sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Nationstar's resources located at or closely connected to this judicial district. Nationstar managed Plaintiff's mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

11.      In August 2007, Plaintiff acquired a mortgage loan through Sun Trust Bank for his property located at 114th Place, Henderson, Adams County, Florida 80640.

12.      In September 2009, Nationstar acquired Plaintiff's mortgage and assigned it loan number xxxxxx4922.

13.     A redacted copy of Plaintiff's payment history to the Nationstar mortgage is attached hereto as Exhibit "A" and incorporated in by reference.

14.     Plaintiff made on-time and full payments in May 2015, December 2015, and January 2016. In March 2016 he made a double payment that should have kept him on-time through May 2016. He made a full payment in June 2016.

15.     Sometime in December 2019, Plaintiff pulled his Equifax credit report and noticed that it was not accurate.

16.     Within the Equifax credit report, Plaintiff noticed that it reported his payments to his Nationstar mortgage late for May 2015, December 2015, May 2016, and June 2016.

17.     A redacted copy of Plaintiff's Equifax Credit Report is attached hereto as Exhibit "B" and incorporated in by reference.

18.     Sometime in December 2019, Plaintiff pulled his Trans Union credit report and noticed that it was not accurate.

19.     Within the Trans Union credit report, Plaintiff noticed that it too reported his payments to his Nationstar mortgage late for May 2015, December 2015, May 2016 and June 2016.

20.     A redacted copy of Plaintiff's Trans Union Credit Report is attached hereto as Exhibit "C" and incorporated in by reference.

21.     On or about February 5, Plaintiff sent direct disputes to Equifax and Trans Union and requested that the CRA Defendants investigate the reporting of the Nationstar mortgage account. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Nationstar mortgage account.

22.     Redacted copies of Plaintiff's unsigned dispute letters sent to Equifax and Trans Union are each attached as Exhibits "D" and "E", respectively and incorporated in by reference.

23.     Equifax responded to Plaintiff's dispute on March 4, 2020.

24.     A redacted copy of Equifax's response is attached hereto as Exhibit "F" and incorporated herein by reference.

25.     Equifax response showed that the May 2015 payment remained marked late, and that an additional late payment was added for May 2014.

26.     Equifax made no other changes to the payment history and offered no explanation.

27.     On November 24, 2020, Plaintiff pulled a tri-merge credit report that included Equifax and TransUnion reports.

28.     A redacted copy of Plaintiff's tri-merge credit report dated November 24, 2020 is attached hereto as Exhibit "G" and incorporated herein by reference.

29.     In addition to Equifax's response, Plaintiff noticed that for the Nationstar mortgage tradeline within the Equifax section on the tri-merge report, Equifax reported Plaintiff as having four payments that were 30-day late, five payments that were 60-day late, and 13 payments that were 90-day late.

30.     On December 21, 2020, Plaintiff obtained a new Equifax credit report and noticed that it listed only May 2019 through September 2019 as late but reported Plaintiff as having three payments that were 30-day late and four payments that were 60-day late.

31.     A redacted copy of Plaintiff's December 20, 2020 Equifax credit report is attached hereto as Exhibit "H" and incorporated herein by reference.

32.     Combining Equifax's response, the November 24, 2020 tri-merge credit report, and

the December 20, 2020 Equifax credit report, Plaintiff has good reason to infer that in addition to the five late months on the Equifax calendar, May 2019 – September 2019, the extra two late months creating seven in the seven-year payment history section are comprised of Equifax still reporting May 2015 as late and adding May 2014 as late in response to the dispute.

33.    Equifax's response, or lack thereof, did not ensure maximum possible accuracy of the Nationstar mortgage, was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Nationstar tradeline because Plaintiff proved that he made timely payments for the months disputed and Equifax made no change to the May 2016 payment and added a late payment to May 2014. Further, Equifax gave no explanation as to why they verified as accurate the way the Nationstar tradeline was furnished.

34.    Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Nationstar account.

35.    Upon the Plaintiff's request to Equifax for verification and addition regarding the Nationstar mortgage account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Nationstar tradeline.

36.    In the alternative, Equifax failed to contact Nationstar, therefore, failed to perform any investigation at all.

37.    In the alternative to the allegation that Equifax failed to contact Nationstar, it is alleged that Equifax did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

38.     Trans Union responded to Plaintiff's dispute on March 7, 2020.

39.     A redacted copy of Trans Union's response is attached hereto as Exhibit "I" and incorporated herein by reference.

40.     Trans Union's response showed that it changed all months marked as "UNK" to very delinquent from May 2016-May 2017.

41.     Plaintiff also noticed that for the Nationstar mortgage tradeline within the Trans Union section on the tri-merge report, Trans Union reported Plaintiff as having four payments that were 30-day late, five payments that were 60-day late, and 13 payments that were 90-day late.

42.     Trans Union's response did not ensure maximum possible accuracy, was not the result of a reasonable investigation into Plaintiff's dispute, and failed to remedy the inaccuracies within the Nationstar tradeline because Plaintiff proved that he made timely payments for the months disputed and Trans Union changed all months marked as "UNK" to very delinquent from May 2016-May 2017 and the updated tri-merge reports showed that Trans Union still reported Plaintiff as having four payments that were 30-day late, five payments that were 60-day late, and 13 payments that were 90-day late. Further, Trans Union gave no explanation as to why they verified as accurate the way the Nationstar tradeline was furnished.

43.     Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Nationstar account.

44.     Upon the Plaintiff's request to Trans Union for verification and addition regarding the Nationstar mortgage account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence and did not

make any attempt to substantially or reasonably verify the Nationstar tradeline.

45.     In the alternative, Trans Union failed to contact Nationstar, therefore, failed to perform any investigation at all.

46.     In the alternative to the allegation that Trans Union failed to contact Nationstar, it is alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

47.     On or about February 5, 2020, Plaintiff sent a dispute letter to Nationstar directly and sufficiently identified himself as a borrower and asked for Nationstar to conduct an investigation into the credit reporting and servicing of his Nationstar mortgage.

48.     Plaintiff's unsigned dispute letter to Nationstar is attached hereto as Exhibit "J" and incorporated herein by reference.

49.     Nationstar responded to Plaintiff's dispute on or about March 13, 2020. Nationstar's response indicated that Nationstar could not identify the error that Plaintiff was referencing.

50.     Nationstar's response to Plaintiff is attached hereto as Exhibit "K" and incorporated herein by reference.

## V.  GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

51.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

52.     Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit

files it published and maintained concerning the Plaintiff.

53.      The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure **maximum possible accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

54.      Equifax knew or should have known Plaintiff's payment history was inaccurate, but Equifax continued to prepare a patently false consumer report concerning Plaintiff.

55.      Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

56.      After Equifax knew or should have known Plaintiff's account status and payment history were inaccurate, it failed to make the corrections.

57.      As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

58.      Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

59.      The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

60.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

61.     Equifax violated 1681i by failing to update inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

62.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

63.     Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

64.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

65.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

66.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow

reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

67.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure **maximum possible accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

68.     Trans Union knew or should have known of Plaintiff's account status and payment history, but Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

69.     Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

70.     After Trans Union knew or should have known Plaintiff's account status and payment history were inaccurate, it failed to make the corrections.

71.     As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

72.     Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

73.     The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an

amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

## COUNT IV – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

74.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

75.     Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to update or delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

76.     As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

77.     Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

78.     The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT V – NATIONSTAR'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

79.     Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

80.     Nationstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Nationstar representation within Plaintiff's credit file with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute of the Nationstar representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Nationstar representations to the consumer reporting agencies.

81.     As a result of Nationstar's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in his attempt to refinance, loss in his ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

82.     Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

### COUNT VI – NATIONSTAR'S VIOLATION OF RESPA

83.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

84.     Under RESPA section 2605(e) and the implementing regulations, a servicer must conduct a reasonable investigation of the errors identified in the borrower's notice and make all appropriate corrections to the account.

85.     Nationstar has negligently and/or willfully violated section 2605(e) by failing to conduct a reasonable investigation of the errors brought to its attention by Plaintiff's request, correct the account accordingly, and left the account riddled with errors.

86.     Nationstar further violated § 2605(e) by failing to credit late charges and/or penalties as required under subsection (2)(A).

87.     Nationstar's failure to respond, conduct a reasonable investigation and make the appropriate corrections to Plaintiff's account, as well as credit late fees and/or penalties, has proximately caused Plaintiff's damages.

88.     Defendant Nationstar is therefore liable to Plaintiff for statutory and actual damages as provided in 12 U.S.C. § 2605(f).

89.     Plaintiff is also entitled to recover reasonable attorney's fees and costs expended in this proceeding from Nationstar as provided in 12 U.S.C. § 2605(f).

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

90.     Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

91.     Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

92.     Plaintiff respectfully requests that this Honorable Court award Plaintiff his litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

93.     The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

94.     Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

95.     Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

96.     Defendants have negligently and/or willfully violated various provisions of the FCRA and Nationstar negligently and/or willfully violated RESPA and are thereby liable unto Plaintiff.

97.     Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, denial in his attempt to refinance his mortgage, credit denials,

costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff, Jefferey Jones prays that this Honorable Court:

A.     Enter Judgment in favor of Plaintiff and against Defendants Equifax Information Services LLC, Trans Union LLC, and Nationstar Mortgage LLC, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, Nationstar's violation of RESPA, applicable state law, and common law;

B.     Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.     Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D.     Order that the CRA Defendants, Equifax Information Services LLC, Trans Union LLC, and Furnisher Defendant, Nationstar Mortgage LLC, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations,

consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

      E.    Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.

Date Filed: <u>January 20, 2021</u>

                                         Respectfully submitted,

                                         */s/ Matthew P. Forsberg*
                                         Matthew P. Forsberg
                                         TX State Bar Number 24082581
                                         Matt@FieldsLaw.com
                                         FIELDS LAW FIRM
                                         9999 Wayzata Blvd.
                                         Minnetonka, Minnesota 55305
                                         (612) 383-1868 (telephone)
                                         (612) 370-4256 (fax)

                                         **LAW OFFICE OF JONATHAN A. HEEPS**

                                       /s/ *Jonathan A. Heeps* .
                                         Jonathan A. Heeps
                                         State Bar No. 24074387
                                         LAW OFFICE OF JONATHAN A. HEEPS
                                         Post Office Box 174372
                                         Arlington, Texas 76003
                                         Telephone (682) 738-6415
                                         Fax (844) 738-6416
                                         jaheeps@heepslaw.com

                                         COUNSEL FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

January 20, 2021                          */s/ Matthew P. Forsberg*
Date                                      Matthew P. Forsberg